## LANGDALE *v.* CITIZENS BANK OF SAVANNAH.

1. A depositor in a savings bank is bound by the reasonable rules of the bank to which he assents by an agreement in writing.

2. A rule providing that "Every effort will be made to protect depositors against fraud, but payment made to a person presenting pass-book shall be good and valid on account of the owner, unless the pass-book has been lost and notice in writing given to [the] bank before such payment is made," is reasonable and binding upon depositors.

3. Under the terms of such a rule, where a pass-book is presented by a person other than the depositor to whom it belongs, together with a forged check bearing a signature similar to that of the depositor, and there is nothing

to arouse the suspicion of the teller or put him upon inquiry, as a reasonably prudent man, as to the genuineness of the check, and the bank in good faith pays the check, believing the person presenting it to be the depositor, it is not liable in a suit by the depositor to recover the money so paid.

4. The principle announced in the preceding headnote is not affected by another rule of the bank, prescribing that depositors must always present their pass-book when depositing or withdrawing money, and that "if not present personally, an order properly signed and witnessed must accompany the presentation of the book, in case of withdrawal."

Argued October 8, — Decided October 17, 1904.

Complaint.    Before Judge Norwood.    City court of Savannah. August 8, 1904.

*Jacob Gazan,* for plaintiff, cited 24 Am. & Eng. Enc. L. (2d ed.) 1258–9; 2 Morse on Bks. & Bkg. (4th ed.) § 620; Ladd *v.* Augusta Sav. Bk. (Me.), 52 Atl. 1012 (7); Kummel *v.* Germania Sav. Bk., 127 N. Y. 488 (13 L. R. A. 788); Allen *v.* Williamsburgh Sav. Bk., 69 N. Y. 304; Boone *v.* Citizens Sav. Bk., 84 N. Y. 83–88; Smith *v.* Brooklyn Sav. Bk., 101 N. Y. 63; Peoples Sav. Bk. *v.* Cripps, 91 Pa. St. 315; Kimball *v.* Norton, 59 N. H. 1 (47 Am. R. 171); Brown *v.* Merrimac Riv. Sav. Bk., 67 N. H. 549 (68 Am. St. R. 700).

*Adams & Adams,* for defendant, cited 5 Cyc. 608, and the authorities referred to in the following opinion.

CANDLER, J.    There is practically no dispute as to the material facts of this case.    The defendant in the court below was a banking corporation, conducting, under authority of its charter, a savings department, depositors in which were paid interest on their deposits.    The savings department was governed by certain rules and regulations, and depositors were required, upon opening their accounts, to sign an agreement to abide by these rules, of which the following are material to the present discussion: "A depositor must always present his or her pass-book when depositing or withdrawing.    If not present personally, an order properly signed and witnessed must accompany the presentation of the book in case of withdrawal."    "Every effort will be made to protect depositors against fraud, but payment made to a person presenting pass-book shall be good and valid on account of the owner, unless the pass-book has been lost and notice in writing given to this bank before such payment is made."    The plaintiff was a depositor in the savings department, and, as such, had assented to

the rules mentioned.    The cashier of the bank cautioned him to take good care of his pass-book and not let it "lie around loose," pointing out to him the rules on the subject.    A check for fifty dollars was drawn against the plaintiff's account, and was cashed. He claims that the check was a forgery, and brings this suit to recover from the bank the amount for which it was drawn.  From the plaintiff's testimony it appears that his pass-book was kept locked in a trunk, and never, so far as he knew, left his possession. Presumably, however, it was stolen and afterwards returned, for the evidence of the bank cashier is undisputed that the person who drew the money on the check presented the pass-book, and the first knowledge that the plaintiff seems to have had that the fifty dollars had been withdrawn from the bank was when, on a subsequent occasion, he took the book to the bank for the purpose of withdrawing money, and noticed the entry of the alleged forged check.    The admittedly genuine signature of the plaintiff, as well as the signature to the check alleged to have been forged, both appear in the record; and while no member of this court claims to be a handwriting expert, it is obvious that the signatures bear a general similarity to each other.    When the check for fifty dollars was presented for payment, the cashier did not compare the signature with the genuine signature of the plaintiff on the books of the bank, but paid the check on the strength of the possession of the pass-book and the similarity of the appearance of the person presenting the check to that of the plaintiff as he recollected him.    The depositors in the savings department of the defendant numbered more than two thousand, the great majority of whom were persons who did not do a general banking business, who were not frequently seen at the bank, and who were therefore not familiar to the bank officials and employees.    The plaintiff was a motorman in the employment of a street-railroad company, and the person drawing the check was apparently also a street-railroad employee.    The testimony for the defendant was positive to the effect that there was nothing to put the cashier, who paid the money, on notice that the check was not genuine, or to arouse his suspicion that the person presenting it was not the plaintiff.   As to this the evidence for the plaintiff was, in the nature of things, silent.    On this state of facts the case went to the jury, who found for the defendant.    The plaintiff made a

motion for a new trial, which was overruled, and he excepted. The motion for a new trial contains numerous grounds; but in its last analysis the case turns upon the single question whether, under the circumstances already narrated, and in view of the rules of the defendant bank, it was the duty of the cashier to make a comparison of the signature to the alleged forged check with the genuine signature of the plaintiff on the books of the bank, or if, there being nothing to reasonably excite his suspicion as to the honesty of the transaction, he was authorized to pay the money by reason of the presentation of the pass-book and an apparently genuine check.

So far as we are aware, no case has ever been decided by this court which is in point on this subject, and we are therefore compelled to rely upon standard text-books and cases adjudicated by other courts for authority for the ruling now made. There are many points of marked difference between savings banks and ordinary banks which receive deposits subject to check and pay no interest thereon. In the nature of the relationship between the savings bank and its depositors, the rules governing that relationship enter into the contract of deposit; and especially is this so when the depositor agrees in writing that he shall be bound by these rules. It is a common rule of such banks that the depositor shall produce his bank-book in order to draw his deposit or any part of it, and that production of the book shall be authority to the bank to pay the person producing it. "This is regarded as a reasonable and binding regulation, and if the bank pay to one having the book, there being no circumstances to excite suspicion and base an imputation of negligence on the part of the bank, the payment is good." 2 Morse on Banks and Banking, § 620; Schoenwald *v.* Metropolitan Svgs. Bk., 57 N. Y. 418; Levy *v.* Franklin Svgs. Bk., 117 Mass. 448; Goldrick *v.* Bristol County Svgs. Bk., 123 Mass. 320; Burrill *v.* Dollar Svgs. Bk., 92 Pa. St. 134, 37 Am. Rep. 669; Donlan *v.* Provident Inst., 127 Mass. 183, 34 Am. Rep. 358; Cosgrove *v.* Provident Inst. (N. J.), 46 Atl. 617. In the case of Sullivan *v.* Lewiston Institution of Savings, 56 Me. 507, 96 Am. Dec. 500, which is very closely in point, it was held: "Officers of savings institutions are required to exercise reasonable care and diligence only in making payments on account of deposits. And if, using such care and

diligence, but lacking present means of identifying the claimant. of the deposit, they make a payment upon presentation of the book by one apparently in the lawful possession of it as owner, the institution has a right to rely upon the contract of the depos-. itor safely to keep the evidence of his claim, or to make known its loss before it is presented for payment, and the depositor is; bound by the payment." The reason for such a rule is at once. apparent when the nature of savings institutions is considered.. Deposits are not subject to check, and most of the depositors are seen but occasionally at the bank, rendering identification of the. depositor more difficult than is the case with ordinary banks. By agreement between the bank and its depositors, possession of' the pass-book is made prima facie evidence of the right to draw· upon the fund which it represents. The check itself is unlike. checks drawn upon ordinary banks, not being negotiable and' being in reality nothing but a receipt for the money drawn. Of course a savings bank would be liable if its officers or employees should negligently or recklessly pay out money to one not entitled to receive it; and this seems to be the basis of the cases relied upon as authority by counsel for the plaintiff in error.. But in this case there seems to have been no negligence charge-. able to the bank. The money was paid in good faith to one in, possession of the plaintiff's pass-book and apparently clothed with, the right to that possession. Under the rules of the bank, as-. sented to by the plaintiff, possession of the pass-book was prima, facie evidence of the right to draw the money which it represented; and there seems to have been absolutely nothing to put. the teller on inquiry as to the genuineness of the check. Under these circumstances we can not hold that it was his duty to go, further and compare the signature with that of the plaintiff, on file in the bank, and that, failing in this, the bank is liable for the money so paid out.

Much stress is laid, in the brief of counsel for the plaintiff in error, upon the rule that unless the depositor is personally present with his pass-book when drawing money, "an order properly signed and witnessed must accompany the presentation of the book in case of withdrawal," and it is urged that because the plaintiff did not appear in person, and the person who did present the pass-book had no order as required by the rule, the bank is,

liable for the payment of the money. Thoughtful consideration must show that this argument is entirely specious. Plainly, this rule has no application to a case like this, where the check drawn was in fraud of both the plaintiff and the bank. Its purport is merely to show that a savings-bank account is not negotiable by delivery of the pass-book, and to prescribe that when a depositor wishes to assign his funds on deposit, he must do it in a certain manner. It is also urged that the rule reciting that "every effort will be made to protect depositors against fraud" required that the cashier or teller to whom the check was presented should at least compare the signature to the check with that of the plaintiff on file with the bank; and that the ensuing clause, "but payment made to a person presenting pass-book shall be good and valid on account of the owner," etc., when taken in connection with the first part of the rule, conveys the meaning that the bank will only be excused from liability when it pays the money after having exerted "every effort" and used extreme caution to prevent fraud. We can not agree with this construction of the rule. Giving it what seems to us a reasonable intendment, the rule means this: We will do what we can to keep you from being defrauded, but as the pass-book is prima facie evidence of the right to draw money, you must look well after your pass-book, and see that it does not fall into the hands of a thief or forger. Our means of identification are imperfect, and if your pass-book is presented by some one other than yourself, with apparent right to draw your money, we will, unless our suspicions are aroused, honor his check without further question. We will deal honestly and fairly with you, but you must take every precaution to protect yourself by the preservation of your pass-book. Such a rule is reasonable, and as the plaintiff in the present case assented to it in writing, he is bound by its terms.

The foregoing disposes of the case on its substantial merits; and it follows that, regardless of inaccuracies in the charge of the court as disclosed by the motion for a new trial, the verdict was demanded, and the judgment overruling the motion will not be disturbed.        *Judgment affirmed. All the Justices concur.*