Anthony F. Zagame, J.
This is an action to recover the sum of $1,000 which plaintiff alleges was wrongfully paid out from plaintiffs’ account due to the negligence of the defendant bank.
The facts which are agreed upon are as follows:
That on November 21, 1967, Beverly Schoen, a teller of defendant bank, who appeared as a witness, paid to a woman unknown to her the sum of $1,000 based upon the presentation by the said unknown woman of a savings account book No. 125-2169 in the names of Mrs. Mollie Kalb or Lawrence J. Kalb, and a withdrawal slip bearing the signature of Mollie Kalb. Teller Schoen further testified that she did not know either Mrs. Mollie Kalb or Lawrence J. Kalb, and qualified that testimony by further stating she had seen Mrs. Mollie Kalb at the bank on numerous occasions and had cashed checks for her, but did not connect the name of Mollie Kalb with the person of the woman f.or whom she had cashed checks. Her testimony also indicated that the woman who made the withdrawal on November 21 did not look like Mollie Kalb in appearance. Teller Schoen further testified that she went to the files and took out the ledger card that pertained to the subject account, compared the signature on the withdrawal slip, and brought the ledger card to Mr. Montante, the assistant manager of the bank, who compared said ledger card with the withdrawal slip and approved the withdrawal. Mr. Montante confirmed this transaction in his testimony. The testimony also indicated the *459 signature of Mollie Kalb on the withdrawal slip was a little bit shaky. The account was opened on November 12, 1964, and during the entire pendency of the account there was only one prior withdrawal of $40.93. The testimony also indicated that Mrs. Kalb’s apartment in Rochdale Village was entered on November 21, 1967, by two women and a man who, under duress, compelled Mrs. Kalb to deliver to them her bankbook and a signed withdrawal slip. There is no testimony that the amount of the withdrawal indicated on the withdrawal slip was written in the same handwriting as the signature of the depositor, Mollie Kalb. There is further testimony that at the time the account was opened it was the bank’s procedure to give the depositor a copy of the Rules and Regulations, and it was testified to that this was done in this instance.
In the defendant bank’s Rules and Regulations, rule No. 4, provides: “ Withdrawals may be made only by the depositor •¡personally at the office where the account is maintained * ® # ”. (Emphasis supplied.)
Rule 5 provides: 1 ‘ Any payment to any person presenting the passbook shall be valid as against the depositor and a full and effectual release of the Bank as to such payment, unless the Bank shall have been previously notified in writing by the depositor that the passbook has been lost or stolen or has otherwise come wrongfully into the hands of another person.”
The immediate question presented is whether, upon the record before us, the plaintiff is entitled to recover, and, as the decision of this question necessarily involves an inquiry into the duties and responsibilities of savings banks or commercial banks with savings accounts toward their depositors, the case is one of more than ordinary importance. What degree of care must a savings bank or a commercial bank with savings accounts exercise in paying money out of a depositor’s account? That is the question which underlies all other questions in this case. A deposit, in the typical banking sense, is the placing of money with a bank to be withdrawn upon the depositor’s demand or under rules and regulations agreed upon; (Gimbel Bros. v. White, 256 App. Div. 439) and a bank depositor is one who delivers to or leaves with the bank money subject to his order. (Wharton v. Poughkeepsie Sav. Bank, 262 App. Div. 598.)
The relationship of a depositor in a savings bank or a depositor having a savings account in a commercial bank of the type operated by the defendant is that of debtor and creditor, (5 N. Y. Jur. Banks and Trust Companies, p. 290) and the bank is only *460 held for negligence in payment of depositor’s moneys to the wrong person. Therefore, the only practicable general rule to which banks can be safely held in such dealings is the rule of ordinary care, leaving it to be applied in the light of the special circumstances that characterize each separate case. (Kelley v. Buffalo Sav. Bank, 180 N. Y. 171, 177.)
The question then is did the officers of the bank fail to exercise ordinary care for the protection of the plaintiff at the time this payment was made? Did any fact appear which would call to the mind of the ordinarily prudent man a doubt or a suspicion that the transaction was not an ordinary business transaction, in the manner in which this book was presented?
Rules and by-laws such as the one hereinbefore quoted are generally recognized throughout this country as valid and binding upon the depositor. (9 C. J. S. Banks and Banking, § 987, pp. 1411, 1412.) But it is also established that despite the incorporation of a rule that the bank is not liable for withdrawals made by persons presenting the bankbook, the bank is required to exercise reasonable care in making payment to a person other than the depositor himself and is liable for the failure to exercise such care. (9 C. J. S., Banks and Banking, § 1006, pp. 1429, 1439.) Such provisions when reasonable and assented to by the depositor are upheld by the court as binding upon the parties. (7 Am. Jur., Banks, § 618, p. 447.)
Therefore, the bank is bound to see that payment was made to the proper person. Payment to any other person is made at the bank’s peril. (Mahon v. South Brooklyn Sav. Inst. 175 N. Y. 69.)
The passbook of a savings bank cannot be regarded as negotiable, and its possession does not constitute proof of a right to draw money thereon. The book imports a liability of the bank to the depositor for the amount of moneys entered therein as deposited, and an agreement to repay at such time and in such manner as he shall direct. Assuming that the by-laws are binding upon the depositor and constitute a contract between the parties, we still think that the duty devolves upon the officers of the bank to exercise care and diligence in order that their depositors may be protected from fraud and larceny. The defendant, by its rules and regulations, to which we have called attention, has undertaken with the plaintiff that payments shall not be made unless he shall call for the same in person. (Rule and Regulation No. 4, supra.) Here is a postive and direct agreement which would absolutely protect the plaintiff from losses of this character. The agreement, however, must be *461 considered as modified by that which follows (Rule and Regulation No. 5, supra), but this modification does not permit the bank officers to carelessly shut their eyes and pay to any person presenting the passbook, but on the contrary, they owe the depositor active vigilance in order to detect fraud and forgery. (Kummel v. Germania Sav. Bank, 127 N. Y. 488.) The passbook, however, is not negotiable paper, and its possession, in itself, constitutes no right to draw money thereon. (McCabe v. Union Dime Sav. Bank, 150 Misc. 157.)
If, by a regulation designed to prevent fraud upon depositors, which by the rules the bank promised to “ endeavor ” to do, a fact or circumstance is brought to the knowledge of the officers, which is calculated to, and ought to excite the suspicion and inquiry of an ordinarily careful person, it is clearly the duty of the officers to institute such inquiry, and a failure to do so is negligence for which the bank would be liable. The officers of these institutions are held to the exercise of reasonable care and diligence. (Appleby v. Erie County Sav. Bank, 62 N. Y. 12.)
One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose. Actual notice may be proved by direct evidence or it may be inferred or implied. Actual knowledge is not required. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstances from which a jury would have been warranted in inferring notice. It is a general rule that if a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, begets inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed. (Fidelity & Deposit Co. of Maryland v. Queens County Trust Co., 226 N. Y. 225.) Thus, it is a well-established rule that a bank cannot rely in making payments solely on the possession and presentation of the passbook, (Noah v. Bowery Sav. Bank, 225 N. Y. 284) but must exercise ordinary care and diligence to ascertain that the person receiving the money is entitled to it. (Noah v. Bowery Sav. Bank, supra.) “It is the duty of the bank to ascertain whether the person to whom it makes payment * * * is the genuine payee, or one authorized by him to receive payment. It is bound at its own peril to determine the *462 identity of the payee (5 N. Y. Jur., Banks and Trust Companies, p. 408.) This is generally held to be true even though the bank has a regulation that possession of the passbook is sufficient evidence of ownership to authorize the bank to make payment and that any payment made to a person producing the passbook is valid as against the depositor and operates to release the bank to the amount of the payment made. (5 N. Y. Jur., Banks and Trust Companies, p. 367.)
It is also well-established law that where there is an inconsistency in verbiage in an instrument that the language shall be construed strongly against the drawer of the instrument.
In the instant case the defendant bank was the promulgator of its Rules and Regulations and the court holds them in strict responsibility for the language chosen.
Too, it is the general rule that if two clauses of an agreement are so totally repugnant that they cannot stand together, the first of such clauses in the contract shall be received and the subsequent one rejected. (Matter of Carr, 49 N. Y. S. 2d 713.)
The fact that a bank has printed in the passbook issued to the depositor a rule to the effect that payment shall be made to the person presenting the book does not relieve it of the duty to exercise care in making payments. Where payment is made to a person wrongfully in possession of the passbook, the bank is liable if, under all circumstances of the case, it was negligent in making the payment without further inquiry or precaution. Public policy will not allow the bank so to strip itself of responsibility by contract as to unable it safely to pay, intentionally or heedlessly, to one who has come into possession of the passbook fraudulently or criminally. (10 Am. Jur. 2d, Banks, p. 511.)
The perfunctory ministerial act of permitting the withdrawal of funds upon the presentation of a passbook and a signed withdrawal slip without any other related act of vigilance o.r caution on the part of the defendant bank is a deficiency in due care in safeguarding the funds of its depositor and standing alone unexplained is a failure to use ordinary care and constitutes negligence on the part of the defendant bank.
Judgment for the plaintiffs, with interest from November 22, 1967.